IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY MASTRONICOLA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY J. PRINCIPI, SECRETARY OF<br>VETERANS AFFAIRS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  No. 2:04-cv-1655<br>)  Judge Thomas M. Hardiman<br>)<br>)<br>)<br>)<br>) |

## OPINION

Plaintiff Timothy Mastronicola (Mastronicola) filed this disability discrimination action against the Secretary of Veterans Affairs, alleging one count of discrimination based on Defendant's failure to accommodate his disability, disparate treatment, and a hostile work environment. Mastronicola's complaint also alleged one count of retaliation. Both counts arise under the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.*, the counterpart for federal agency defendants to the employment provisions of the Americans with Disabilities Act (ADA). Presently before the Court is Defendant's motion for summary judgment on both counts.

### I.      Factual Background

In April 1979, Mastronicola suffered the loss of his left eye and severe injury to his right eye. In June 1991, the Veterans Administration Medical Center in Butler, Pennsylvania (VA) hired Mastronicola as a food service worker. He initially worked the evening shift (4:15 p.m. to 7:15 p.m.), and because he performed limited work duties, Mastronicola did not prepare food, assemble trays, move carts, or deliver and pick up trays from patients' rooms. In 1998, after the

VA implemented an advanced meal delivery system that involved using more prepackaged foods, Mastronicola was assigned to the day shift (7:30 a.m. to 3:30 p.m.), still in the position of food service worker. Mastronicola worked fifteen hours per week on both the day and evening shifts.

On or about August 7, 2003, the VA reassigned Mastronicola to the evening shift because of staff shortages resulting from retirements and resignations. On August 14, 2003, Mastronicola formally requested that he be reassigned to the day shift. According to Mastronicola, "public transportation was not available at the conclusion of the night shift[,] and walking home in the dark caused him extreme difficulty due to his disability." On September 16, 2003, Mastronicola's supervisor denied his request, stating that a change in shift would unduly burden the VA administratively and financially. In particular, there was no longer enough work for Mastronicola to perform during scheduled day shifts of fifteen hours per week, and since September 2003, no food service workers have been working such shifts.

On October 8, 2003, the VA's Business Director and Human Resources Manager sent a memorandum to Mastronicola stating that the VA had examined the vacancy list to determine whether any other positions were available as accommodations. The memorandum offered a twelve-hour per week day shift housekeeping aide position, which required Mastronicola to submit to a mental health examination and review of his medical records. The memorandum also mentioned a thirty-hour per week day shift food service worker position, but noted that it "cannot accommodate your current medical restrictions." In response to the VA's overtures, on October 28, 2003, Mastronicola rejected the housekeeping aide position in a one-sentence handwritten fax from his counsel to the VA.

On December 1, 2003, the VA scheduled Mastronicola to attend CPR training, but he did not attend because it was his day off. On December 6, 2003, Mastronicola filed a formal complaint with the Equal Employment Opportunity Commission (EEOC).[1] Subsequently, though unclear from the record exactly when, the VA offered Mastronicola the thirty-hour per week day shift food service worker position referenced in the October 8, 2003 memorandum. *See* Pl.'s Dep. at 145. Mastronicola rejected the offer "because it would cut my Social Security benefits." *Id.* When asked by opposing counsel why he would lose those benefits, Mastronicola responded, "I would lose it because of the amount of money I would make over the month period." *Id.* Although he refused the thirty-hour per week position, Mastronicola would have accepted a full-time, forty-hour per week day shift position because it would have included medical benefits directly from the VA. *See* Oral Argument Tr. at 32.

In September 2004, Mastronicola's work leader asked him to clean three-tiered carts, as well as the drains and grates in the kitchen, both of which Mastronicola described as undesirable tasks. The work leader also asked him to "deck scrub" the floor, which involved using a scrub brush on a post and did not require him to get on his hands and knees, but Mastronicola refused to do so. Finally, beginning in November 2004, the VA began requiring Mastronicola to have his cleaning tasks reviewed daily, even though his colleagues' tasks were reviewed only weekly, because Mastronicola performed more cleaning duties in lieu of other food service work, such as delivering and retrieving trays, because of his disability.

---

[1] Additional complaints followed on January 25, 2004 and November 23, 2004.

3

## II.     Legal Standard

Rule 56 requires the entry of summary judgment on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). An issue is "material" only if the factual dispute "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"Summary judgment procedure is properly regarded not as a disfavorable procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted). The parties have a duty to present evidence; neither statements of counsel in briefs or at oral argument nor speculative or conclusory allegations satisfy this duty. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). After the moving party has filed a properly supported motion, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must make a showing sufficient to establish the existence of each element essential to his case on which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322-23.

### III. Analysis

   *A.   Reasonable Accommodation Claim*

In the employment context, "[w]hether suit is filed under the Rehabilitation Act or under the [ADA], the substantive standards for determining liability are the same." *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995). The ADA provides: "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). To prove a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that he: (1) is disabled; (2) is a qualified individual with a disability; and (3) has suffered an adverse employment action because of that disability. *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006).

In this case, the VA first argues that Mastronicola has failed to demonstrate that he is "disabled" within the meaning of the ADA. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. §12102(2). The phrase "substantially limited" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 762 (3d Cir. 2004) (citing 29 C.F.R. §1630.2(j)(1)(i), (ii)). Major life activities include "caring for oneself, performing manual

tasks, walking, seeing, hearing, speaking, breathing, learning," and working, though this list is not exhaustive. *Mondzelewski v. Pathmark Stores*, 162 F.3d 778, 783 n.2 (3d Cir. 1998) (quoting 29 C.F.R. §1630.2(i)). Only if a plaintiff is not limited in a life activity other than working should a court consider whether the plaintiff is substantially limited in the major life activity of working. *Id.* at 783.

Contrary to the VA's argument, Mastronicola has adduced sufficient evidence to show that he is substantially limited in the major life activity of seeing. The Supreme Court has noted that "the [ADA] requires monocular individuals, like others claiming the Act's protection, to prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999). In this case, it is undisputed that Mastronicola suffered the loss of his left eye and severe injury to his right eye. Furthermore, Mastronicola relies on an August 29, 2003 letter from Dr. Freeman, which states that "beyond the focal length of six inches[,] print becomes blurred and indistinguishable to" Mastronicola. The VA does not deny the existence of this letter, but "denies that there is any objective medical evidence to substantiate the visual impairments and/or limitations averred . . . ." Def.'s Resp. to Pl.'s Statement of Add'l Material Facts at ¶ 3. Mastronicola also presented an April 27, 2005 letter from Dr. Balouris stating that "the patient has significant visual field limitations as well as significant limitation of his visual function." Viewing the facts in the light most favorable to the non-moving party, the Court finds that a genuine issue of material fact exists as to whether Mastronicola is disabled within the meaning of the ADA because the two letters tend to show that Mastronicola's depth perception and visual field are substantially impaired in terms of his own experience. In light of

the foregoing, the Court need not address Mastronicola's additional assertions that he is limited in the major life activities of working and performing manual tasks.

The VA next argues that Mastronicola is nonetheless not a *qualified* individual with a disability. The ADA defines a "qualified individual with a disability" (QID) as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires." 42 U.S.C. §12111(8). According to the VA, Mastronicola is unable to perform the essential functions of a food service worker. The Court of Appeals has held: "[w]hether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] all relevant evidence.'" *Turner*, 440 F.3d at 612 (emphasis omitted) (quoting *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d Cir. 1998) (en banc) (quoting 29 C.F.R. §1630.2(n))). Despite the fact that the VA now claims that he performed only 30% of the duties of the food service worker job, Mastronicola has worked in that position for fifteen years, so a jury certainly could infer that he is able to perform the essential functions of his position. In addition, the manner by which the VA calculated the 30% figure remains uncertain, and a jury, upon hearing all the evidence, reasonably could conclude either that Mastronicola performed more than 30% of the job's duties or that the essential functions of the position are not as extensive as the VA suggests.

The VA next argues that Mastronicola is not a QID because he has refused to accept its offer of reasonable accommodation, namely, the thirty-hour per week day shift position. If an employee "rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position,

the individual will not be considered a qualified individual with a disability." 29 C.F.R. §1630.9(d); *see also Shultz v. Potter*, 142 Fed. Appx. 598, 600 (3d Cir. 2005) (per curiam) (holding that employee loses QID status after applying §1630.9(d)); *Verzeni v. Potter*, 109 Fed. Appx. 485, 489 n.1 (3d Cir. 2004) (same); *Waite v. Blair, Inc.*, 937 F.Supp. 460, 472-73 (W.D. Pa. 1995) (same). In *Shultz*, the diabetic plaintiff rejected her supervisor's offers to let her test her blood at locations other than the one she insisted upon. The Court of Appeals held that the plaintiff "turned down these offers without a reasonable explanation, and therefore cannot be considered a 'qualified individual with a disability.'" 142 Fed. Appx. at 600 (citing *Keever v. City of Middletown*, 145 F.3d 809, 811-12 (6th Cir. 1998) (police officer not a QID because he refused reasonable offer of reassignment to a desk job, even though he wanted reassignment to a less demeaning and more challenging position)). Likewise in *Verzeni*, the Court of Appeals noted "that if Verzeni could only perform his job with medication and he refused that medication, he would not be considered 'otherwise qualified.'" 109 Fed. Appx. at 489 n.1.

In this case, there is no question that Mastronicola rejected the VA's offer; all that remains to be determined is whether the thirty-hour per week day shift accommodation was reasonable as a matter of law. In deciding a motion for summary judgment on this question, a court decides "whether a genuine issue of material fact exists." *Turner*, 440 F.3d at 614; *see also Buskirk v. Apollo Metals*, 307 F.3d 160, 170-71 (3d Cir. 2002) (affirming district court's judgment as a matter of law that employer's accommodation was reasonable even though employee had requested a different position); *Wells v. Shalala*, 228 F.3d 1137, 1145 (10th Cir. 2000) (adjustable keyboard tray, ergonomic keyboard, and luggage cart were reasonable accommodations even though employee wanted to be relieved of his travel obligations

altogether); *Toye v. United Airlines, Inc.*, 172 F.3d 59, 1999 WL 97262, at *1 (9th Cir. 1999) (unpublished) (positions offered by employer were reasonable accommodations even though employee wanted some other position); *Schmidt v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 342, 344-45 (7th Cir. 1996) (additional retraining and re-application were reasonable accommodations even though employee preferred transfer to another unit); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-02, (6th Cir. 1996) (paid sick leave, paid personal days, voluntary time-off program, and vacation time were reasonable as accommodations even though employee requested a transfer that would allow her to continue working); *Llanes v. Sears, Roebuck & Co.*, 46 F.Supp.2d 1300, 1309 (S.D. Fla. 1997) (accommodations reasonable even though employee loses more lucrative sales leads).

Here, the Court finds that no genuine issue of material fact exists. It is settled law that "[t]he ADA does not require an employer to create a new position to accommodate an employee with a disability." *Buskirk*, 307 F.3d at 169. It is undisputed in the instant case that fifteen-hour per week scheduled day shifts for food service workers no longer exist at the VA. Even assuming they did exist, the VA is not obligated to offer that position to Mastronicola, so long as it offers him another reasonable accommodation. *See* 29 C.F.R. pt. 1630, App. §1630.9 ("the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide"). As the Supreme Court has held in analogous circumstances, an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is provided instead. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986); *see also Mays v. Principi*, 301 F.3d 866, 872 (7th Cir. 2002); *Shiring v. Runyon*, 90 F.3d

827, 831 (3d Cir. 1996). Accordingly, there must be a genuine issue of material fact that the VA's offer was *unreasonable*, not just that is was *not ideal*.

In this case, the VA's offer that Mastronicola work the *day shift* as a food service worker for thirty hours per week was reasonable because it fully accommodates Mastronicola's only disability-related limitation, *viz.*, that he could not see well enough to walk home after working the *evening shift*. Nothing in the record indicates that Mastronicola found unreasonable the offered accommodation because he was incapable—either physically or mentally—of working longer hours.[2] In fact, his counsel represented at oral argument that Mastronicola would have accepted a full-time, forty-hour per week day turn position because it would include medical benefits directly from the VA.[3] If Mastronicola is capable of working forty hours per week, he is certainly able to work thirty hours per week. Moreover, Mastronicola himself admitted that he rejected the offer "because it would cut my Social Security benefits," not because his problems seeing would preclude him from working thirty hours per week on the day shift. When asked by opposing counsel at his deposition why he would lose those benefits, Mastronicola responded: "I would lose it because of the amount of money I would make over the month period." But for this one fact, the thirty-hour per week day turn accommodation the VA offered is exactly the same as

---

[2] The record demonstrates that Mastronicola spends quite some time working when he is not at the VA. For example, from 1997 to the present, he has built and maintained computer systems for private individuals including coworkers at the VA, totaling some twenty hours a week. *See* Pl.'s Dep. at 53-54, 57-59. Mastronicola has also worked at a nightclub in Butler, Pennsylvania from approximately 1993 to the present, filling various positions from disc jockey to dance instructor. Apparently, he works there whenever the owner may need him. *Id.* at 60, 96. These additional jobs reveal that Mastronicola had the physical and mental ability to work beyond fifteen hours per week.

[3] Given this representation, there is a serious question whether Mastronicola is eligible to receive Social Security benefits even if he remains on a fifteen-hour per week shift. *See Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 113 n.1 (3d Cir. 2003) (benefits ineligibility results as long as claimant has capacity to work the requisite amount, even if claimant is not actually doing that work).

those Mastronicola would have accepted of both shorter and longer hours per week.[4]

Mastronicola responds, however, that this single difference renders the VA's offered accommodation unreasonable. It appears that Mastronicola bases his argument on the notion that Social Security benefits constitute the kind of job-related payments and benefits whose material decrease would render an accommodation unreasonable. *See, e.g., Mondzelewski*, 162 F.3d at 787-88. But this argument completely misunderstands the nature of Social Security benefits. Social Security benefits—unlike, *e.g.*, salaries, bonuses, and health benefits—are not "job-related" because the VA does not provide them to Mastronicola as a term or condition of his employment. Although the reported federal decisions do not state the following proposition explicitly, the law cannot be that the VA, while satisfying its obligation to offer reasonable accommodation under the Rehabilitation Act, must simultaneously do everything in its power to make sure that Mastronicola remains "disabled" for purposes of the Social Security Act. The ADA is premised on the notion that a QID wishes to and should work to the extent that his disabilities permit, not "just enough" so as to maximize his income from the federal government. *See, e.g.*, 1 Henry H. Perritt, Jr., *Americans with Disabilities Act Handbook* §2.04 (4th ed. 2003). The Social Security regulations, for example, mandate that those who receive benefits promptly inform the Social Security Administration if, *inter alia*, their earnings increase. 20 C.F.R. §416.988(d). It would be a strange result indeed if the ADA required as an accommodation the avoidance of the application of §416.988(d) to an employee fully capable of performing the work

---

[4] The record also plainly shows that this accommodation, unlike the twelve-hour per week housekeeping aide position, was not tied to Mastronicola's willingness to submit to a mental stability examination or review of his medical records. Oral Argument Tr. at 26. The Court assumes without deciding that Mastronicola's rejection of the housekeeping aide position was reasonable because it was based on his unwillingness to sit for the health examinations or produce medical records.

that results in the earnings increase. In the instant case, the fact remains that the VA has offered Mastronicola a job during the day which not only reasonably but fully accommodates his only disability-related limitation, *viz.*, seeing at night.[5]

The Court also bases its conclusion on the Appendix to the ADA regulations, which explains that "employers are obligated to make reasonable accommodation only to the physical or mental limitations *resulting from the disability* of a qualified individual with a disability that is known to the employer." 29 C.F.R. pt. 1630, App. §1630.9 (emphasis added); *see also Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2003) ("[T]here must be a causal connection between the major life activity that is limited and the accommodation sought."). As such, a reasonable accommodation need not accommodate "other unrelated conditions." *Buckley v. Consol. Edison Co. of N.Y.*, 155 F.3d 150, 157 (2d Cir. 1998) (en banc).[6] Therefore, the employer in that case did not need to accommodate a neurogenic bladder condition unrelated to the substance abuse disability at issue in the case. *Id.* Similarly, in *Boykin v. ATC/Vancom of Colorado, L.P.*, 247 F.3d 1061 (10th Cir. 2001), the employer was under no obligation to offer the employee a position that did not conflict with his school schedule because the employer's obligation "does not extend to modifications requested primarily for personal benefit of the

---

[5] Similarly, Mastronicola cannot insist on receiving the medical benefits that apparently would have been part of a forty-hour per week full-time position because no part-time VA food service worker, disabled or not, receives those benefits. This would be a different case had Mastronicola worked a full-time evening shift, and *then* the VA offered a part-time day shift accommodation without benefits. *See Mondzelewski*, 162 F.3d at 787-88. Under the facts of this case, however, Mastronicola never worked full-time and so was never entitled to VA-provided medical benefits. Oral Argument Tr. at 24.

[6] *See also* 29 C.F.R. §1630.2(o)(3) (employer "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations"); 29 C.F.R. pt. 1630, App. §1630.9 (employer "should . . . ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation").

disabled individual." *Id.* at 1065-66.

Like *Buckley* and *Boykin*, here there is no genuine issue of material fact as to whether the VA's proposed accommodation was reasonable because the adverse effect Mastronicola would suffer by accepting the accommodation is an "unrelated condition" that the VA need not accommodate. Because he rejected the VA's offer of reasonable accommodation, Mastronicola loses his status as a QID and cannot establish a *prima facie* case.

### B.   *Disparate Treatment Claim*

In addition to his failure to accommodate claim, Mastronicola argues that he suffered disparate treatment. To establish a *prima facie* case of disparate treatment under the ADA, a plaintiff must show that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir.1998)). Because Mastronicola is not a QID, he has failed to meet the second element of the *Shaner* test. *See Gaul*, 134 F.3d at 580 (second element is the QID analysis).

Even assuming, *arguendo*, that he were a QID, Mastronicola nonetheless fails to satisfy the third element because he has not raised a genuine issue as to whether he suffered any adverse employment action, let alone an action that resulted from discrimination. There cannot be an adverse employment action unless there is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a change in benefits." *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir.

13

2001). Here, Mastronicola argues that the additional cleaning responsibilities assigned to him beginning in September 2004 constituted an adverse employment action.[7] This argument can be rejected summarily because cleaning responsibilities were always part of his job description as a food service worker, which listed "clean," "scrub," "wipe," and "wash" as duties. Hence, no reasonable factfinder could accept Mastronicola's argument that there was a significant change in employment status or reassignment with significantly different responsibilities. The same goes for Mastronicola's argument that the VA improperly scheduled him to attend a CPR class on his day off. First, he would have been compensated for his time. Second, all employees at the VA are required to obtain CPR certification. Third, and most importantly, the VA took no adverse action whatsoever against Mastronicola for his failure to attend the required training.

    C.    *Hostile Work Environment Claim*

To establish a *prima facie* case of hostile work environment under the ADA, a plaintiff must show: (1) he is a QID; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action. *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999). As with his disparate treatment claim, Mastronicola's hostile work environment claim fails at the very first step because he is not a QID. Even if he were a QID, however, no reasonable factfinder could conclude that Mastronicola was subject to harassment,

---

[7] Mastronicola's reassignment from day shift to evening shift would have constituted an adverse employment action, *see, e.g.*, *Turner*, 440 F.3d at 611 n.4, but, as noted above, the VA has proposed the reasonable accommodation of placing him on the day shift for thirty hours per week.

let alone harassment so "severe or pervasive" as to create an abusive working environment. In *Walton*, the Third Circuit held as a matter of law that the employee had not adduced sufficient facts to show harassment based on conduct that included her supervisor calling her "ten days consecutively when she was first hospitalized, asking each day when she would be returning to work (this upset [the employee] to the point that her doctor asked her to request that [the supervisor] stop calling)." *Id.* at 667 n.4. Nothing in this case remotely reaches the level of behavior found insufficient in *Walton*. There is nothing abusive about asking Mastronicola to clean the kitchen because that was what he was hired to do. Similarly, there is nothing abusive about asking Mastronicola to take a CPR class as all other employees are required to do.

D.   *Retaliation Claim*

Mastronicola's final claim is for retaliation. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Shaner*, 204 F.3d at 500 (quoting *Krouse v. Amer. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). It is undisputed that Mastronicola engaged in protected activity when he requested a reasonable accommodation and when he complained to the EEOC. Based on the same reasoning used to address the disparate treatment claim, however, the retaliation claim fails because no reasonable factfinder can conclude that the VA took an adverse employment action against Mastronicola.

Even assuming, *arguendo*, that the additional cleaning duties were deemed adverse, Mastronicola has not marshaled any evidence that his protected activities triggered those actions.

When temporal proximity is used to establish the requisite causal link, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Williams*, 380 F.3d at 760 (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 n.9 (3d Cir. 2003)). Here, six months passed after Mastronicola filed his second EEOC complaint when the VA told him to clean in a manner that he alleges was adverse. In *Williams*, two months were not "unduly suggestive" as a matter of law. *Id.* As for the CPR class, it predated Mastronicola's first formal EEOC complaint and is, in any event, so insignificant and routine that one cannot reasonably infer any retaliatory motive therefrom.

Without temporal proximity, an employee still can prove causation using "timing plus other evidence." *Id.* (quoting *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)). Mastronicola asserts that a "pattern of antagonism" surfaced between the VA and himself, which establishes the requisite causal link. But Mastronicola's evidence of such a pattern amounts to little more than the allegedly adverse employment actions themselves. Asking him to clean and attend CPR training in the middle of winter are actions easily distinguishable from what sufficed as demonstrating a "pattern of antagonism" to defeat summary judgment in the cases Mastronicola cited. As for the one conversation between Mastronicola's supervisors that "it would be a cold day in hell before [Mastronicola] got the cook supervisor position," this one isolated statement is insufficient to amount to a genuine issue whether a pattern of antagonism had developed since the time of the filing of the EEOC complaints. Indeed, the VA's good faith efforts to accommodate Mastronicola throughout this period belie such an allegation. Additionally, the VA has explained that Mastronicola cleans and completes sign-off sheets more frequently than his fellow food service workers because he

continues to be exempt from preparing food, assembling trays, moving carts, or delivering and picking up trays from patients' rooms. Accordingly, no inference of retaliation can reasonably be drawn therefrom.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted in its entirety.

An appropriate Order follows.

October 30, 2006

_____
Thomas M. Hardiman
United States District Judge